UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALAKANAPATHY RAJARATNAM,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BOARD OF TRUSTEES OF THE<br>LELAND STANFORD JUNIOR<br>UNIVERSITY,<br><br>        Defendant. | Case No.16-cv-07413-HRL<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 19 |

Plaintiff Balakanapathy Rajaratnam ("Rajaratnam") sues Defendant Board of Trustees of the Leland Stanford Junior University ("Stanford") for retaliation in violation of the whistleblower protection provisions of the American Reinvestment and Recovery Act of 2009 ("ARRA"). Dkt. No. 1. Rajaratnam also sues Stanford and other defendants in state court for retaliation (under state law) and various additional claims related to the same underlying events. In the motion pending before the court, Stanford moves to dismiss or, in the alternative, to stay this action pursuant to the *Colorado River* doctrine. Dkt. No. 19. Both parties have consented to magistrate judge jurisdiction. Dkt. Nos. 6, 13. For the reasons explained below, the court grants defendant's motion and STAYS this action.

## BACKGROUND

Rajaratnam is an Assistant Professor of Statistics and Earth System Science at Stanford. Dkt. No. 1, ¶ 3. Rajaratnam reported suspected plagiarism and conflicts of interest to the Institute of Mathematical Statistics, which appointed Stanford Professor Iaian Johnstone ("Johnstone") to investigate the accusations. *Id.*, ¶¶ 13, 14. Johnstone rejected Rajaratnam's charges, though Rajaratnam alleges that Johnstone concealed evidence of plagiarism and warned Plaintiff to keep his accusations quiet if he wanted to stay at Stanford. *Id.*, ¶¶ 15, 16.

Rajaratnam reported the suspected plagiarism and Johnstone's cover-up to Stanford Dean Pamela Matson ("Matson") and several others, but Stanford declined to investigate Johnstone. *Id.*, ¶¶ 17, 18. Instead, Rajaratnam alleges, when a graduate student advisee whose romantic overtures he had previously rebuffed filed a complaint against him, Dean Richard Saller, a "close personal friend of Johnstone," led the investigation. *Id.*, ¶ 20. Rajaratnam asserts that the investigation did not comply with Stanford's procedures for handling such complaints and included irrelevant questions about his plagiarism accusations. *Id.*, ¶ 20. At the conclusion of the investigation, Saller and Matson issued findings adverse to Rajaratnam and prohibited him from mentoring graduate students. *Id.*, ¶ 21. Rajaratnam appealed to Provost John Etchemendy, and later to President John Hennessey, asserting that Saller used a student complaint as a pretext for retaliating against him for reporting Johnstone's cover-up. *Id.*, ¶ 22. Etchemendy upheld Saller's decision. *Id.*, ¶ 22. Hennessey denied the appeal and ordered Saller and Etchemendy's findings to be placed in Rajaratnam's personnel file, where they would be visible to the tenure review committee. *Id.*, ¶ 26. Rajaratnam's tenure application was denied. *Id.*, ¶ 27.

In April 2015, Rajaratnam filed a whistleblower report against Stanford with the Office of the Inspector General of the National Science Foundation ("NSF"), alleging reprisal in violation of ARRA whistleblower provisions. *Id.*, ¶ 25. The NSF declined to investigate. *See id.*, ¶ 8.

Rajaratnam's action against Stanford includes one claim for violation of ARRA Section 1553. This claim alleges that Stanford, a non-Federal employer receiving ARRA funds, retaliated against Plaintiff for reporting plagiarism and a related cover-up by disciplining him for unfounded sexual harassment allegations and denying him tenure. *Id.*, ¶¶ 30-32. Plaitiff seeks compensatory damages, damages for mental and emotional distress, attorney fees, costs, and prejudgment interest. *Id.*

Rajaratnam filed an action in Santa Clara County Superior Court in January 2015 against Stanford and various individual defendants, including Etchemendy, Saller, Matson, and others. Dkt. No. 19, Hurtado Decl., ¶ 3, Ex. 1. The First Amended Complaint in that action is based on the same sequence of events described above. *Id.*, Ex. 1. It includes claims for breach of contract, breach of the covenant of good faith and fair dealing, retaliation (Cal. Lab. Code § 1102.5),

violation of the fair procedure doctrine, violation of privacy interests, interference with prospective economic advantage, specific performance, and defamation. *Id.* The retaliation claim asserts that defendants retaliated against Rajaratnam for reporting plagiarism and a cover-up by disciplining him. *Id.*

All of the named parties in the state court action have been served and have filed answers. Dkt. No. 19, Hurtado Decl., ¶ 5. The court has conducted three case management conferences and four mediation status reviews, and the parties participated in a full-day mediation session. *Id.* The parties have exchanged written discovery, and the court ruled on one discovery motion. *Id.* The state court also denied Rajaratnam's motion for a preliminary injunction. *Id.*, ¶ 4.

In light of the state court action, Stanford moves the court to dismiss or, in the alternative, to stay this action pursuant to the *Colorado River* doctrine, arguing that the relevant factors for declining jurisdiction have been met. Rajaratnam opposes the motion, responding that the state and federal court actions are not parallel and that the *Colorado River* factors favor retaining jurisdiction.

## LEGAL STANDARD

Ordinarily, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). But under "exceptional" circumstances, a district court may stay or dismiss an action where there are parallel proceedings pending in a state court. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). Such a surrender of jurisdiction is not a form of abstention, but rather a form of deference to the state court in the interest of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

The Supreme Court and Ninth Circuit have described several factors to consider in determining whether to stay or dismiss an action pursuant to *Colorado River*. These factors include: (1) whether either the state or federal court has assumed jurisdiction over a *res*, (2) the

3

convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law provides the rule of decision, (6) whether the state court is capable of adequately protecting the federal litigant's rights, (7) the avoidance of forum-shopping, and (8) whether the state court proceedings will resolve all issues before the federal court. *Colo. River*, 424 U.S. at 818-20; *Moses H. Cone*, 460 U.S. at 23, 26; *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989); *R.R. Street & Co. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). No factor is necessarily dispositive, and courts should not treat the factors as a "mechanical checklist." *Moses H. Cone*, 460 U.S. at 16. Instead, courts must balance the factors "as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.*

## DISCUSSION

**Factor Eight: Parallel Proceedings.**

Rajaratnam argues that whether the proceedings are parallel is a threshold issue, while Stanford considers it one of the factors (factor eight, above). The court need not resolve this dispute, as, either way, the proceedings here are parallel.

Exact parallelism is not required for the *Colorado River* doctrine to apply; instead, the two proceedings must be "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Proceedings are substantially similar when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Gallagher v. Dillon Grp. 2003-I*, No. CV-09-2135-SBA, 2010 WL 890056, at *3 (N.D. Cal. Mar. 8, 2010) (quoting *Travelers Cas. & Sur. Co. of Am. v. Comerica Bank*, 2009 U.S. Dist. LEXIS 60905 (E.D. Cal. July 15, 2009)).

Here, the state proceeding includes defendants and claims absent from the federal suit. Additionally, the retaliation claim in this action is based on a federal law, while the state court retaliation claim is based on state law. Nevertheless, these actions are parallel because the state suit would resolve all of the issues in the federal suit, and substantially the same parties are litigating substantially the same issues in the two forums. The sole issue in the federal suit— whether Stanford retaliated against Rajaratnam for reporting plagiarism and a cover-up by

disciplining him—is present in, and would be resolved by, the state suit.

Rajaratnam asserts that the actions are not parallel because the federal claim affords him additional forms of relief that are not available in the state court proceeding (e.g., reinstatement). He does not, however, *request* any forms of relief in the federal proceeding that he does not request in the state proceeding, so this argument is not persuasive.

The actions are parallel, and this factor weighs in favor of staying or dismissing the case.

**Factors One and Two: *Res* and (Geographic) Convenience.**

These factors are irrelevant, as there is no *res* here and the forums are equally convenient to both parties. Rajaratnam argues that neutral factors should weigh in favor of retaining jurisdiction, citing *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001), but courts in the Ninth Circuit have treated neutral factors as irrelevant. *See, e.g.*, *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011); *Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989).

**Factor Three: Piecemeal Litigation.**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Phil.), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). A correct application of this factor "involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). A concrete policy to avoid piecemeal litigation or some other special complication must generally be present for this factor to weigh in favor of a stay or dismissal. *See R.R. Street & Co. Transport Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011) (the piecemeal litigation factor weighed in favor of a stay where the state court had consolidated multiple cases "to create a comprehensive scheme" for deciding an issue).

Here, allowing the federal suit to go forward could result in piecemeal litigation, duplication of effort, and inconsistent results, in that both courts would be deciding the same factual issues and evaluating the same evidence with respect to the retaliation claims. But beyond

inconvenience and duplication of effort, Stanford has not demonstrated any special policies or particular circumstances making piecemeal litigation a unique danger in this instance. Thus, this factor is neutral.

**Factor Four: Order of Obtaining Jurisdiction.**

In weighing which forum obtained jurisdiction first, the court should consider not only when the actions were filed, but also "how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S at 21. Here, the state action has been pending for two-and-a-half years. All named defendants have been served and answered, and the parties have exchanged written discovery. Additionally, the state court has issued two rulings—one discovery order and an order on Plaintiff's motion for a preliminary injunction. The parties before the state court have engaged in several case management conferences and mediation-related discussions, and a trial-setting conference is scheduled in about a month-and-a-half. In contrast, the federal action has just begun. Stanford has not answered the complaint and there has been no case management conference or discovery.

Rajaratnam argues that this factor should weigh in favor of retaining jurisdiction because his federal claim could not have been brought sooner due to administrative exhaustion requirements. Rajaratnam's argument has some mitigating effect; but due to the more advanced stage of the state court action, this factor weighs in favor of a dismissal or stay.

**Factor Five: Rule of Decision.**

When federal law provides the rule of decision in a case, this factor "must always be a major consideration weighing against surrender [of jurisdiction]." *Moses H. Cone*, 460 U.S. at 26. Courts in this circuit have acknowledged, however, that this factor "becomes less significant" when state and federal courts have concurrent jurisdiction over a claim. *Nakash*, 882 F.2d at 1416.

Rajaratnam argues that ARRA is a federal statute that establishes jurisdiction in federal court. But state courts are presumed to have concurrent jurisdiction over a federal cause of action. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990). "The presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal

6

interests." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981).

Rajaratnam has not demonstrated that any of these rebuttal considerations are present here. Though ARRA specifically mentions jurisdiction in the federal district courts, it does not "affirmatively divest state courts of their presumptively concurrent jurisdiction." *See Yellow Freight*, 494 U.S. at 823. This factor thus weighs in favor of retaining jurisdiction, but concurrent jurisdiction in the state court makes it less significant.

**Factor Six: Whether the State Court Can Adequately Protect the Federal Litigant's Rights.**

Rajaratnam argues that the state forum and the state claims are insufficient to protect his federal rights. The ARRA, he asserts, allows forms of relief unavailable to him under his state-law retaliation claim (e.g., reinstatement). Additionally, the ARRA provides for attorney fees to the prevailing party, while Rajaratnam would have to make an additional showing to recover attorney fees under California Code of Civil Procedure Section 1021.5 in state court (as California Labor Code Section 1102.5 does not have its own attorney fee provision).

Rajaratnam, however, does not seek re-instatement in the federal action. And courts in this district have held that "the possibility of attorney's fees, alone, is insufficient to preclude a stay under the *Colorado River* doctrine." *Brito v. New United Motor Mfg., Inc.*, No. C 06-06424-JF, 2007 WL 1345197 (N.D. Cal. May 8, 2007). Rajaratnam's concern about attorney fees is also lessened by the fact that attorney fees may be available to him in state court; they simply require a different showing. *Cf. Am. Int'l Underwriters (Phil.), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) (rejecting the argument that "a set of evidentiary rules" renders a state court proceeding inadequate).

The state court can adequately protect Rajaratnam's rights, and this factor weighs in favor of a dismissal or a stay. To the extent that Rajaratnam's rights could be left unprotected due to an unexpected turn of events in the state court, this court may stay, rather than dismiss, the federal action. *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 244 (9th Cir. 1989) (discussing the merits of a stay rather than a dismissal).

**Factor Seven: Forum-Shopping.**

Stanford argues that the avoidance of forum-shopping weighs in favor of a dismissal or

7

stay. It argues that Rajaratnam has litigated in the state court for two-and-a-half years and incurred two adverse rulings (on the discovery motion and the preliminary injunction motion), and that his invocation of federal jurisdiction is an attempt to avoid the state court's decisions.

The state court's preliminary injunction order includes a substantive decision adverse to Rajaratnam. Rajaratnam had argued that the defendants should be barred from considering the findings of the investigations concerning him because Stanford did not follow its internal procedures. The court, however, determined that Rajaratnam did not show that the internal procedures applied in his particular case and denied his motion.

Though the preliminary injunction decision is adverse to Rajaratnam, it is not central to his retaliation claim, and the inference that it motivated his selection of a federal forum is not necessarily a strong one. This factor weighs slightly in favor of dismissing or staying the suit.

## CONCLUSION

After weighing the eight factors discussed above, the court determines that exceptional circumstances are present such that a stay or dismissal of this suit is appropriate. In light of the various considerations described in *Attwood v. Mendocino Coast District Hospital* recommending a stay rather than a dismissal, 886 F.2d 241, the court grants Defendant's motion and STAYS this case pending resolution of the state court action.

**IT IS SO ORDERED.**

Dated: 7/3/2017

_____
HOWARD R. LLOYD
United States Magistrate Judge